UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL HUPP,<br><br>        Plaintiff,<br><br>v.<br><br>SAN DIEGO COUNTY, SAN DIEGO POLICE DEPARTMENT, et al.,<br><br>        Defendants. | Civil No. 12cv0492 GPC(RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S EMERGENCY EX PARTE MOTION TO QUASH RAYMOND WETZEL SUBPOENAS [ECF NO. 133]** |

    On July 23, 2013, Plaintiff Paul Hupp submitted a Notice of Emergency Ex Parte Motion and Emergency Ex Parte Motion to Quash Raymond Wetzel Subpoena; the Motion addresses two subpoeanas for records [ECF No. 133]. The Court stayed any production of records under the subpoenas and set a briefing schedule for Plaintiff's Ex Parte Motion. (See Mins., July 24, 2013, ECF No. 134.) Plaintiff's Supplemental Brief Supporting Emergency Ex Parte Motion to Quash Raymond Wetzel Subpoena [ECF No. 136] was filed nunc pro tunc to July 24, 2013; it adds a third subpoena to Hupp's Motion to Quash. On August 7, 2013, Defendants City of San Diego and Raymond Wetzel filed their Opposition to Plaintiff's Motion to Quash Subpoena [ECF No. 137]. Plaintiff's Reply was filed nunc pro tunc

to August 15, 2013 [ECF No. 144]. For the following reasons, Plaintiff's Ex Parte Motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

On February 28, 2012, Plaintiff Paul Hupp, proceeding pro se, commenced this action pursuant to 42 U.S.C. § 1983. (Compl. 1, ECF No. 1.) Plaintiff's Third Amended Complaint was filed on August 28, 2012 [ECF No. 64], naming as Defendants San Diego County, City of San Diego, City of Beaumont, James Patrick Romo, Raymond Wetzel, William Kiernan, Peter Myers, and Joseph Cargel. (Third Am. Compl. 1, ECF No. 64.) Hupp's action arises from his contempt of court charges and conviction in San Diego Superior Court in 2011. (See id. at 4-5, 7-8.)

Plaintiff alleges that in November 2010, Jeffrey Freedman[1] obtained a three-year restraining order against Hupp in San Diego Superior Court. (Id. at 4.) In July 2011, Freedman brought contempt charges against Hupp for sending letters to Freedman in violation of the restraining order. (Id. at 5.) Defendant William Kiernan, an attorney from the San Diego County Office of the Assigned Counsel, was appointed to represent Hupp. (Id.) Hupp alleges that Kiernan failed to investigate the case or request discovery, failed to communicate with Hupp, and that his lack of preparation amounted to ineffective assistance of counsel. (Id. at 6-7.) Plaintiff also claims that Defendants performed DNA and fingerprint tests on the letters and envelopes allegedly sent by him, but Defendants wrongfully withheld this exculpatory forensic

---

[1] All claims against Defendant Freedman in this case were dismissed on June 4, 2012 [ECF No. 35].

1  evidence until February 2012, when they produced the evidence in
2  another court case. (Id. at 11-12.)
3     Plaintiff claims that he was wrongfully convicted based on
4  insufficient evidence and sentenced to twenty-five days in custody
5  and a $5,000 fine. (Id. at 7.) Hupp alleges that the trial judge
6  improperly denied him custody credits under the California Penal
7  Code section 4019. (Id. at 8.)
8     On January 3, 2012, Hupp reported to the San Diego Sheriff's
9  Department to serve his twenty-five day sentence. (Id. at 9.)
10 Plaintiff claims that he told the Sheriff's Department personnel
11 that they had to apply his custodial credits under California Penal
12 Code, but they refused to apply the section 4019 credits. (Id.)
13 Hupp also claims that he was denied access to the law library and
14 prevented from filing legal papers. (Id. at 10-11.)
15    Plaintiff alleges that Defendants never disclosed to him that
16 the San Diego District Attorney's office, San Diego Police
17 Department, Deputy District Attorney Romo, and Defendant Wetzel
18 were investigating and assisting Deputy Attorney General Drcar
19 prosecute the November 2011 civil contempt proceedings against
20 Hupp. (Id. at 7, 11.) Hupp also claims that Defendants failed to
21 disclose exculpatory DNA and fingerprint evidence obtained from the
22 letters Freedman received in violation of Plaintiff's due process
23 rights under Brady v. Maryland, 373 U.S. 83 (1963). (Id. at 11-
24 12.)
25    These allegations form the basis of Plaintiff's claims for
26 violation of civil rights, conspiracy to withhold Brady evidence,
27 interference with legal mail and free speech, unlawful detention,
28 intentional infliction of emotional distress, as well as gross

negligence in the hiring, training, supervision, and retention of prosecutors and peace officers. (See id. at 12-29.) Hupp claims that Defendants' actions caused him emotional and psychological injuries, embarrassment, humiliation, shame, fright, fear, and grief. (Id. at 14, 20-21.) In connection with his claims, Plaintiff seeks compensatory and punitive damages exceeding $75,000, as well as declaratory and injunctive relief. (Id. at 35-37.)

## II. LEGAL STANDARD

Plaintiff's Ex Parte Motion seeks to quash three subpoenas served by Defendant Wetzel on the custodian of records at the San Diego Sheriff's Department. (See Pl.'s Ex Parte Mot. Quash Raymond Wetzel Subpoena 1,[2] ECF No. 133; Pl.'s Supplemental Br. Supporting Ex Parte Mot. Quash Raymond Wetzel Subpoena 2, ECF No. 136.) Hupp argues that the subpoenas are overly broad, lack relevance, and the records sought are not material. (Pl.'s Ex Parte Mot. Quash Raymond Wetzel Subpoena 8, ECF No. 133.) He also claims that the subpoenas constitute "an extreme invasion into the personal privacy of Plaintiff." (Id. at 9.)

A party may serve a subpoena commanding a nonparty "to produce documents, electronically stored information, or tangible things." Fed. R. Civ. P. 45(a)(1)(C). The subpoena is subject to the relevance requirements set forth in Rule 26(b) and may command the production of documents which are "nonprivileged" and "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information includes matter "reasonably calculated to lead to the

---

[2] Because Hupp's Emergency Ex Parte Motion is not consecutively paginated, the Court will cite to it using the page numbers assigned by the Court's ECF system.

discovery of admissible evidence." Id. The information sought need not be admissible at trial as long as it appears reasonably calculated to lead to the discovery of admissible evidence. Id. A "relevant matter" under Rule 26(b)(1) is any item that "bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

On a timely motion, a subpoena may be quashed if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . ." Fed. R. Civ. P. 45 (c)(3)(A)(iii).

> A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Fed. R. Civ. P. 45(d)(2)(A). Rule 26(b) requires essentially the same information from a party who withholds information otherwise discoverable due to a claim of privilege. Fed. R. Civ. P. 26(b)(5)(A). Any objection to a subpoena must be served on the party or attorney requesting the discovery "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(c)(2)(B).

Neither Plaintiff nor Defendants address what law should be applied to Hupp's claims. Generally, in federal question cases, privileges asserted in response to discovery requests are determined under federal law, not the law of the forum state. Fed. R. Evid. 501; United States v. Zolin, 491 U.S. 554, 562 (1989).

Federal Rule of Evidence 501 also states that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501.

In his Complaint, Hupp alleges both a federal civil rights claim and state law claims. "[I]n federal question cases . . . in which state law claims are also raised . . . , any asserted privileges relating to evidence relevant to both state and federal claims are governed by federal common law." 6 James Wm. Moore et al., Moore's Federal Practice § 26.47[4], at 26-334.1 (3d ed. 2013); see Fitzgerald v. Cassil, 216 F.R.D. 632, 635 (N.D. Cal. 2003) (applying federal law of privilege to alleged violations of Fair Housing Act, 42 U.S.C. § 3604, and various state law claims). Similarly, in Stallworth v. Brollini, 288 F.R.D. 439, 442 (N.D. Cal. 2012), the court applied federal common law to resolve claims of privilege in an action alleging § 1983 and state law claims. Accordingly, federal common law will be applied to Hupp's claims. "State law may provide guidance, but it is not the law of the circuit." Gorton v. Bick, Case No. 1:05-CV-00354-LJO-DLB PC, 2010 U.S. Dist. LEXIS 107783, at *5 (E.D. Cal. Sept. 28, 2010) (citing Green v. Baca, 226 F.R.D. 624, 643-44 (C.D. Cal. 2005)).

California law recognizes a constitutional right to privacy in an individual's medical history. See Pettus v. Cole, 49 Cal. App. 4th 402, 440, 57 Cal. Rptr. 2d 46, 72 (1996) ("[I]t is well settled that the zone of privacy created by [article I, section 1 of the California Constitution] extends to the details of a patient's medical and psychiatric history.") (citing Cutter v. Brownbridge, 183 Cal. App. 3d 836, 842, 228 Cal. Rptr. 545, 549 (1986), and Wood v. Superior Court, 166 Cal. App. 3d 1138, 1147,

1  212 Cal. Rptr. 811 (1985)); <u>Bd. of Med. Quality Assurance v.</u>
2  <u>Gherardini</u>, 93 Cal. App. 3d 669, 678, 156 Cal. Rptr. 55, 60 (1979)
3  ("[F]undamental to the privacy of medical information 'is the
4  ability to control [its] circulation[.]'") (alteration in original)
5  (citation omitted).
6      But this constitutional right to privacy is not absolute and
7  must be balanced against a compelling public interest, such as "the
8  legitimate interests of real parties in preparing their defense."
9  <u>Jones v. Superior Court</u>, 119 Cal. App. 3d 534, 550, 174 Cal. Rptr.
10 148, 158 (1981); see <u>Ragge v. MCA/Universal Studios</u>, 165 F.R.D.
11 601, 604 (C.D. Cal. 1995) (discussing documents in employee's
12 personnel files).  Thus, a California plaintiff who seeks recovery
13 for mental injuries "unquestionably waive[s] [the] physician-
14 patient and psychotherapist-patient privileges as to all
15 information concerning the medical conditions which [he has] put in
16 issue . . . ."  <u>Britt v. Superior Court</u>, 20 Cal. 3d 844, 849, 574
17 P.2d 766, 768-69, 143 Cal. Rptr. 695, 697 (1978).
18     In <u>Carrig v. Kellogg USA Inc.</u>, Case No. C12-837RSM, 2013 U.S.
19 Dist. LEXIS 13560, at *5 (W.D. Wash. Jan. 30, 2013), the court
20 discussed federal law of waiver applicable to physician-patient and
21 psychotherapist-patient privileges.

> District courts have adopted different approaches to determine wether the patient has waived his or her psychotherapist-patient privilege.  Under the broad approach, . . . a simple allegation of emotional distress in a complaint constitutes waiver.  Under the narrow approach, . . . there must be an affirmative reliance on the psychotherapist-patient communications before the privilege will be deemed waived.
>
> There is a middle ground . . . .  Under this approach, courts have generally found a waiver when the plaintiff has done more than allege "garden-variety" emotional distress.

Id. at *5-6 (internal citations omitted).  This Court agrees that a waiver of privacy rights to mental health records should occur only if a plaintiff assets "more than a garden-variety claim of emotional distress." Turner v. Imperial Stores, 161 F.R.D. 89, 97 (S.D. Cal. 1995) (applying middle approach); see Fitzgerald v. Cassil, 216 F.R.D. at 633, 638-39 (adopting narrow approach and finding no waiver of privacy when plaintiff did not allege "cause of action for intentional or negligent infliction of emotional distress" or "specific psychiatric injury or disorder or unusually severe emotional distress extraordinary in light of the allegations").

### III. DISCUSSION

Defendant City of San Diego issued three subpoenas to the San Diego Sheriff's Department requesting production of various records related to Plaintiff Paul Hupp, booking number 12500589.  (Decl. Milligan Opp'n Pl.'s Mot. Quash Subpoena Attach. #2, at 3,[3] ECF No. 137.)  The first subpoena is addressed to the custodian of records, San Diego County Sheriff's Department, 9621 Ridgehaven Ct., San Diego, CA 92123, and seeks records and video recordings, namely "[c]omplete records from the first date to the present, including but not limited to any records/documents that may be stored digitally and/or electronically: records in your possession, custody, or control pertaining to this person."  (Id. at 3-4.)  The second subpoena is directed to the custodian of records, San Diego County Sheriff's Department, located at 5255 Mt. Etna Dr., San

---

[3] Because the attachment to the Declaration of Milligan is not consecutively paginated, the Court will cite to it using the page numbers assigned by the Court's ECF system.

1  Diego, CA 92117, and seeks "photographs," more specifically
2  described in the attachment as follows:
3      Complete photographs from the first date to the present,
    including but not limited to any records/documents that
4      may be stored digitally and/or electronically: any and
    all photographs or duplicate laser copies thereof
5      (photocopies are not acceptable) in your possession,
    custody, or control (either received by you or taken by
6      you).
7      Booking #12500589.
8  (*Id.* at 7-8.)  The third subpoena is addressed to the custodian of
9  records, San Diego County Sheriff's Medical Records Department,
10 5530 Overland Ave., Bldg. 5530, Ste. 370, San Diego, CA 92123, and
11 requests the production of "Billing Records; Photographs; Medical
12 Records; Mental Health Records; Dental Records; X-Rays/MRIs/CT
13 scans; Records; [and] Video Recording(s)"  (*Id.* at 10.)  The
14 attachment to the subpoena provides an exhaustive, albeit at times
15 repetitious, clarification of this request:
16     Complete medical records, billing records, and radiology
    images from the first date of treatment to the present,
17     including but not limited to any records/documents that
    nay be stored digitally and/or electronically: documents,
18     medical reports, doctor's entries, nurse's notes,
    progress reports, cardiology reports, radiology reports,
19     x-ray reports, MRI reports, lab reports, pathology
    reports, monitor strips, physical therapy records,
20     case history, emergency records, diagnosis, prognosis,
    condition, admit and discharge records, charges, explanation
21     of benefits, payments, adjustments, write-offs, balances due,
    itemized billing charges, X-rays, MRI's, CT's, myelograms,
22     tomograms, MRA's PET scans, CAT scans, fluoroscopy, documents
    including sign-out sheets or communications which demonstrate
23     that any items were checked out from or removed from your
    facility, radiology reports, x-ray reports, MRI reports, CT
24     reports, myelogram reports, cardiology reports, and any other
    radiology reports.  All approved radiology images must be
25     produced on film or on a DICOM compliant CD only.  Prior to
    duplication, please provide a breakdown of all radiology
26     images in your possession, custody, or control.  All emails
    between physicians and the patient regarding physical
27     complaints, symptoms, and treatment, including secure
    messages.
28

>Complete dental records from the first date of treatment to the present, including but not limited to any records/documents that may be stored digitally and/or electronically: dental records/reports, radiology reports, notes, correspondence, prescription slips, telephone messages, diagnostic reports, and itemized statements of the billing charges. All emails between physicians and the patient regarding physical complaints, symptoms, and treatment, including secure messages.
>
>Complete mental health records from the first date of treatment to the present, including but not limited to any records/documents that may be stored digitally and/or electronically: medical records pertaining to any and all care, treatment, and/or examinations, notes, records, and reports of psychotherapy diagnosis, evaluation, and treatment, and any other records relating to mental health. All emails between physicians and the patient regarding physical complaints, symptoms, and treatment, including secure messages.
>
>Booking #12500589
>
>To include any and all records from San Diego County Jail Medical Records; William Didier, Chief, Medical Records; and 8525 Gibbs Dr., Ste. 303, San Diego, CA 92123.

(Id. at 11.)

Plaintiff objects to the production of his records on the grounds that the subpoenas are overly broad, do not seek relevant evidence, invade his privacy, and are protected from disclosure by the physician-patient privilege. (Pl.'s Mem. P. & A. Supp. Ex Parte Mot. Quash 9-10, ECF No. 133.) Hupp argues that the information requested is not relevant to any defense Wetzel might have. Plaintiff contends that Defendants are conducting a "'fishing expedition' into the personal, private and confidential life of Plaintiff in order to harass and intimidate him . . . ." (Id. at 9.) Hupp points out that although he expressed the concerns about the scope of the information sought in the subpoenas, Defendants have not agreed to limit their request. (Id. at 10-11.) Plaintiff therefore seeks to quash the subpoenas in

their entirety, and asks the Court to sanction Defendant Wetzel. (Id. at 11-12.)

In response, Defendants City of San Diego and Raymond Wetzel, aka Charlie Wetzel, argue that "Plaintiff has placed his medical records at issue[,]" which justifies the intrusion into his privacy. (Defs.' Opp'n Mot. Quash 2, ECF No. 137.) They argue that Hupp's medical records are relevant to whether his alleged emotional distress may have been caused by something other than Defendants' actions, such as any pre-existing medical or psychological issues. (Id. at 2-3.) Defendants claim that Plaintiff waived any privacy rights he normally would have by alleging emotional distress, and fairness dictates they be allowed access to Hupp's medical records. (Id. at 3-4.) They acknowledge that the subpoenas seek a "variety of different categories of documents, but nothing that is unusual in a personal injury case." (Id. at 4.) Defendants also point out that because some of the events alleged in the pleadings occurred while Hupp was housed at the San Diego County Jail, any medical treatment he received while there is relevant to the case. (Id.) Finally, they argue that any privacy concerns can be properly addressed by a narrowly-drawn protective order. (Id. at 5.)

Plaintiff replies that to the extent privacy is waived by bringing the suit, the waiver applies to the matters directly related to the litigation. (Pl.'s Reply 2, ECF No. 144.) Hupp argues that Defendants failed to show a compelling interest in accessing his complete medical records and photographs. (Id. at 2-3.) He also claims that he "has not waived any privilege by placing his medical condition at issue . . . ." (Id. at 4.) Hupp

contends that because Defendants fail to show any relevance of his medical records to this litigation, the Court should grant his request to quash the subpoenas. (Id. at 4-6.)

To the extent Plaintiff objects to the subpoenas on the relevance ground, the Court overrules his objection in part. In his fifth cause of action, Hupp alleges a claim for intentional infliction of emotional distress against Defendants San Diego Police Department and Wetzel. (Third Am. Compl. 20-21, ECF No. 64.) Plaintiff contends that Defendants brought civil contempt of court charges against him with intent to "harass, annoy, intimidate, incite, threaten and instill fear . . . ." (Id. at 13.) He claims that he "suffered injuries as a proximate cause of [Defendants]'s actions, including, but not limited to, the following, to wit: (1) humiliation; (2) loss of liberty; (3) emotional distress; (4) psychological distress; (5) losses of the safety, pleasure, joy and vitalities of life that are of a continuing nature." (Id. at 14.) He seeks over $75,000 in compensation for emotional damages that he allegedly suffered because of Defendants' actions. (Id. at 35.)

By alleging a claim for intentional infliction of emotional distress and seeking damages for mental and emotional injuries, Hupp is seeking more than garden-variety emotional distress damages. Plaintiff has placed at issue the extent of his emotional distress and therefore waived his privacy rights with respect to his medical records. A plaintiff who raises issues concerning his mental or emotional condition and seeks damages for mental or emotional injuries waives the right to privacy with respect to those issues. See Schwenk v. City of Alameda, No. C-07-00849 SBA

(EDL), 2011 U.S. Dist. LEXIS 18836, at *2-3 (N.D. Cal. Feb. 11, 2011) (denying motion to compel release of mental health records where plaintiff claimed garden variety emotional distress damages and did not assert claims for intentional or negligent infliction of emotional distress); EEOC v. Vail Corp., Civil Action No. 07-cv-02035-REB-KLM, 2008 U.S. Dist. LEXIS 86046, at *7 (D. Colo. Oct. 2, 2008) (finding that mental condition was not "in controversy" absent a separate claim for intentional infliction of emotional distress or "a damages claim for severe and emotionally devastating harm") (citation omitted). Hupp's waiver, however, only applies to the records that are clearly relevant and directly related to his mental and emotional injuries. See, e.g., In re Lifschutz, 2 Cal. 3d 415, 427, 467 P.2d 557, 564, 85 Cal. Rptr. 829, 836 (1970) ("[T]he patient-litigant exception of section 1016 of the [California] Evidence Code compels disclosure of only those matters which the patient himself has chosen to reveal by tendering them in litigation.").

In addition to Hupp's mental health records, Defendants' subpoenas seek production of his dental records, billing statements, radiology and lab reports, and many other items of information not directly related to his claim of intentional infliction of emotional distress or any other claim. To the extent they argue that complete medical records are discoverable because Plaintiff's alleged emotional injury may have been caused by something other than Defendants' actions, their speculation is not sufficient to warrant disclosure.

In this case, Hupp has placed his psychological condition at issue only to the extent it was caused by Defendants' actions.

Unlike a typical personal injury case, Plaintiff does not allege a physical injury caused by Defendants that required medical treatment. Instead, he claims that Defendants' conduct in bringing civil contempt of court charges violated his civil rights and caused him emotional distress. As currently stated, Defendants' discovery requests are overbroad. In opposing the Ex Parte Motion to Quash, they fail to explain how Hupp's entire medical record is relevant to the claims in this case.

Plaintiff has not waived his privacy rights with regard to his complete medical record by bringing a claim for intentional infliction of emotional distress. Britt, 20 Cal. 3d at 863-64, 574 P.2d at 779, 143 Cal. Rptr. at 707. Additionally, Hupp has made a timely objection to such a disclosure by bringing this Ex Parte Motion. See Fed. R. Civ. P. 45(c)(2)(B). Therefore, although Defendants are entitled to reasonable discovery that will show the nature and possible causes of Hupp's emotional injury, their request for the array of medical records, doctors' entries and reports, nurses' notes, messages, images and video records is overbroad and must be limited to the information proximately related to the causes of action alleged.

Accordingly, Defendants' first subpoena addressed to the San Diego County Sheriff's Department, 9621 Ridgehaven Ct., San Diego, CA 92123, seeking records and video recordings, is limited to records reflecting Hupp's mental health condition. Similarly, production of any photographs under Defendants' second subpoena directed to the custodian of records at the 5255 Mt. Etna Dr., San Diego, CA 92117, is hereby limited to photographs of Plaintiff that reflect his mental health condition, if any. Defendants' third

subpoena addressed to San Diego County Sheriff's Medical Records Department, 5530 Overland Ave., Bldg. 5530, Ste. 370, San Diego, CA 92123, which seeks "Billing Records; Photographs; Medical Records; Mental Health Records; Dental Records; X-Rays/MRIs/CT scans; Records; [and] Video Recording(s)" is modified as follows: (1) the request in the subpoena is stricken except the words "Mental Health Records"; (2) the first two paragraphs of Attachment A are stricken in their entirety.  The remaining paragraph three in Attachment A is modified as follows:

> Complete mental health records from the first date of treatment to the present, including but not limited to any <u>mental health</u> records/documents that may be stored digitally and/or electronically: medical records pertaining to any ~~and all~~ <u>mental health</u> care, treatment, and/or examinations, notes, records, and reports of psychotherapy diagnosis, evaluation, and treatment, and any other records relating to mental health.  All emails between physicians and the patient regarding ~~physical or~~ mental complaints, symptoms, and treatment, including secure messages.
>
> Booking #12500589.
>
> To include any and all records from San Diego County Jail Medical Records; William Didier, Chief, Medical Records; and 8525 Gibbs Dr., Ste. 303, San Diego, CA 92123.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Ex Parte Motion to Quash the subpoenas to the extent they seek records not related to Hupp's mental or emotional injuries.  The Court **DENIES** the Ex Parte Motion to Quash the subpoenas in any other respect. Any production under the subpoenas must be consistent with this

Order and limited to Plaintiff's mental health records as discussed herein.

**IT IS SO ORDERED.**

Dated: September 25, 2013

_____
Ruben B. Brooks
United States Magistrate Judge

cc: Judge Curiel
   All Parties of Record