FILED

14 APR 10 AM 9:37

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DG ___ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PAUL HUPP,

                 Plaintiff,

v.

SAN DIEGO COUNTY, SAN DIEGO
POLICE DEPARTMENT, et al.,

                 Defendants.

Civil No. 12cv0492 GPC(RBB)

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
COMPEL DISCOVERY FROM CITY OF
SAN DIEGO AND RAYMOND WETZEL
[ECF NO. 152]**

     On September 9, 2013, Plaintiff Paul Hupp filed a "Motion to Compel Discovery [from] the City of San Diego and Raymond Wetzel [ECF No. 152]." Defendants opposed this motion on October 15, 2013 [ECF No. 173], and Hupp filed his reply on October 21, 2013 [ECF No. 180]. The Court determined that the matter was suitable for resolution without oral argument, submitted the motion on the parties' papers pursuant to the Local Civil Rule 7.1(d), and vacated the motion hearing [ECF No. 181]. For the following reasons, Plaintiff's Motion to Compel is GRANTED in part and DENIED in part.

## I.  FACTUAL BACKGROUND

Plaintiff Paul Hupp, proceeding pro se, commenced this action on February 28, 2012, under the provisions of 42 U.S.C. § 1983. (Compl. 1, ECF No. 1.)  Plaintiff's Third Amended Complaint contains twelve causes of action and was filed on August 28, 2012 [ECF No. 64], naming as Defendants San Diego County,[1] the City of San Diego, the City of Beaumont,[2] James Patrick Romo,[3] Raymond Wetzel, William Kiernan,[4] Peter Myers, and Joseph Cargel.  (Third Am. Compl. 1, ECF No. 64.)  Hupp's lawsuit arises from contempt of court charges brought against him and his ensuing conviction in San Diego Superior Court in 2011.  (Id. at 4-5, 7-8.)

Plaintiff alleges that in November 2010, Jeffrey Freedman[5] obtained a three-year restraining order against him in San Diego Superior Court.  (Id. at 4.)  In July 2011, Freedman brought contempt charges against Hupp for sending letters to Freedman in violation of the restraining order.  (Id. at 5.)  Defendant William Kiernan, an attorney from the San Diego County Office of the Assigned Counsel, was appointed to represent Plaintiff.  (Id.)  Hupp alleges that Kiernan's failure to investigate, request

---

[1]  Allegations against San Diego County include causes of action against the San Diego County District Attorney's office, San Diego County Office of Assigned Counsel, and the San Diego County Sheriff's Department.  (Third Am. Compl. 2, ECF No. 64.)

[2]  Defendant City of Beaumont was dismissed from the case on December 10, 2012 [ECF No. 105].

[3]  Defendants Romo and San Diego County District Attorney's Office's Motion for Summary Judgment was granted on January 9, 2014 [ECF No. 221].

[4]  Defendant Kiernan's Motion to Dismiss was granted on December 16, 2013 [ECF No. 210].

[5]  All claims against Defendant Freedman were dismissed on June 4, 2012 [ECF No. 35].

1  discovery, or communicate with Hupp amounted to ineffective

2  assistance of counsel.  (Id. at 6-7.)  Plaintiff also claims that

3  Defendants performed DNA and fingerprint tests on the letters and

4  envelopes allegedly sent by him, and wrongfully withheld

5  exculpatory forensic evidence until February 2012, when they

6  produced the evidence in another court case.  (Id. at 11-12.)

7       Hupp was convicted and sentenced to twenty-five days in

8  custody and fined $5,000; he asserts that this conviction was based

9  on insufficient evidence.  (Id. at 7.)  Plaintiff also alleges that

10  his trial judge improperly denied him custody credits under

11  California Penal Code section 4019.[6]  (Id. at 8.)

12       On January 3, 2012, Hupp reported to the San Diego County

13  Sheriff's Department to serve his twenty-five day sentence.  (Id.

14  at 9.)  Plaintiff claims that he told the Sheriff's Department

15  personnel to apply section 4019 custody credits to his sentence,

16  but they refused to do so.  (Id.)  Hupp also alleges he was denied

17  access to the law library and was prevented from filing legal

18  papers.  (Id. at 10-11.)

19       Plaintiff contends that Defendants never informed him that the

20  San Diego County District Attorney's office, San Diego Police

21  Department, Deputy District Attorney Romo, and Detective Wetzel

22  were investigating and assisting Deputy Attorney General Drcar in

23  prosecuting the November 2011 civil contempt proceedings against

24  Hupp.  (Id. at 7, 11.)  He also asserts that Defendants failed to

25  disclose exculpatory DNA and fingerprint evidence obtained from the

26  letters Freedman received, in violation of Hupp's due process

27

28  [6]  Defendant County of San Diego's Motion for Judgment on the
Pleadings as to Hupp's cause of action regarding the failure to
apply custody credits was granted on March 4, 2014 [ECF No. 239].

3                                   12cv0492 GPC(RBB)

1  rights under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).   (<u>Id.</u> at 11-
2  12.)

3       These allegations are the basis of Plaintiff's claims for
4  violation of his civil rights; conspiracy to withhold <u>Brady</u>
5  evidence; interference with legal mail and free speech; unlawful
6  detention; intentional infliction of emotional distress; as well as
7  gross negligence in the hiring, training, supervision, and
8  retention of prosecutors and peace officers.  (<u>Id.</u> at 12-29.)  Hupp
9  also alleges that Defendants' actions caused him emotional and
10 psychological injuries, embarrassment, humiliation, shame, fright,
11 fear, and grief.  (<u>Id.</u> at 14, 20-21.)  For his injuries, Plaintiff
12 seeks compensatory and punitive damages exceeding $75,000, as well
13 as declaratory and injunctive relief.  (<u>Id.</u> at 27-30, 35-37.)

14                    **II.   LEGAL STANDARDS**
15      **A.   Motion to Compel**

16      "Parties may obtain discovery regarding any nonprivileged
17 matter that is relevant to any party's claim or defense . . . .
18 Relevant information need not be admissible at the trial if the
19 discovery appears reasonably calculated to lead to the discovery of
20 admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Rule 37 of the
21 Federal Rules of Civil Procedure enables the propounding party to
22 bring a motion to compel responses to discovery.  Fed. R. Civ. P.
23 37(a)(3)(B).  The party resisting discovery bears the burden of
24 opposing disclosure.  <u>Miller v. Pancucci</u>, 141 F.R.D. 292, 299 (C.D.
25 Cal. 1992).

26      As the moving party, Hupp carries the burden of informing the
27 court of (1) which discovery requests are the subject of his motion
28 to compel, (2) which of the defendants' responses are disputed, (3)

why the responses are deficient, (4) the reasons defendants'
objections are without merit, and (5) the relevance of the
requested information to the prosecution of his action.  See, e.g.,
Brooks v. Alameida, No. CIV S-03-2343-JAM-EFB P, 2009 WL 331358, at
*2 (E.D. Cal. Feb. 10, 2009) ("Without knowing which responses
plaintiff seeks to compel or on what grounds, the court cannot
grant plaintiff's motion."); Ellis v. Cambra, No. CIV
02-05646-AWI-SMS PC, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27,
2008) ("Plaintiff must inform the court which discovery requests
are the subject of his motion to compel, and, for each disputed
response, inform the court why the information sought is relevant
and why Defendant's objections are not justified.").

**B.  Pro Se Litigants**

"In general, pro se representation does not excuse a party
from complying with a court's orders and with the Federal Rules of
Civil Procedure." Ackra Direct Mktg. Corp. v. Fingerhut Corp., 86
F.3d 852, 856-57 (8th Cir. 1996) (citing Jones v. Phipps, 39 F.3d
158, 163 (7th Cir. 1994); Anderson v. Home Ins. Co., 724 F.2d 82,
84 (8th Cir. 1983)).  Accordingly, plaintiffs who choose to
represent themselves are expected to follow the rules of the court
in which they litigate.  Carter v. Comm'r, 784 F.2d 1006, 1008-09
(9th Cir. 1986); see also Bias v. Moynihan, 508 F.3d 1212, 1223-24
(9th Cir. 2007) (finding that district court did not abuse its
discretion by failing to consider the pro se litigant's untimely
filings).  "[W]hile pro se litigants may be entitled to some
latitude when dealing with sophisticated legal issues,
acknowledging their lack of formal training, there is no cause for
extending this margin to straightforward procedural requirements

5

1  that a layperson can comprehend as easily as a lawyer." <u>Jourdan v.</u>

2  <u>Jabe</u>, 951 F.2d 108, 109 (6th Cir. 1991).

3                      **III.  DISCUSSION**

4       Plaintiff's brief and exhibits in support of his motion to

5  obtain discovery from Defendants City of San Diego and Raymond

6  Wetzel total more than seventy pages [ECF No. 152].  Despite this

7  voluminous submission, Hupp fails to articulate how Defendants'

8  objections to his requests are not justified.

9       **A.   Motion to Compel Defendant City of San Diego**

10       Plaintiff served six requests for production on Defendant City

11  of San Diego.  (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 23-26,

12  ECF No. 152.)  The City made general and some specific objections

13  to the requests, but it produced documents in response to requests

14  1 and 4.  (<u>Id.</u> at 44-45.)  The Court analyzes each request in turn.

15              **1.   Request for production no. 1**

16       Hupp's first request asks the City for "[a]ny and all

17  documents which are in your possession concerning the investigation

18  of Plaintiff, and more fully set forth in the Complaint, including

19  Plaintiff's civil contempt case; Superior Court Case Number 37-

20  2010-00102264-CU-HR-CTL, and Plaintiff's criminal case; Superior

21  Court Case Number SCD238651." (<u>Id.</u> at 23-24.)  Plaintiff defined

22  the request as follows:

23       This shall include at a minimum, but is not limited to:

24            a. Any and all reports or forms describing any and
          all aspects of the investigation;

25

26            b. Any and all investigation reports, including
          fingerprint and DNA evidence;

27            c. Any and all audio, video and digital recordings;

28            d. Any and all statements of WETZEL concerning or
          mentioning Plaintiff, including any and all email

1          without regard to whether said email account/s are
           work or personal;

2
           e. Any and all inter-office memos, intra-office
3          memos, reports, letters, correspondence,
           computerized records or writings that mention,
4          concern, discuss or pertain to Plaintiff;

5          f. Statements and/or interviews of any witnesses,
           informants, the Plaintiff, Deputy District
6          Attorneys, lawyers, police agents and any Peace
           Officers including but not limited to WETZEL, or
7          other persons who had any role or contact with
           WETZEL concerning the investigation of Plaintiff,
8          including any supervisor/s.

9   (Id. at 24.)

10       The City objects to this request and argues that "[it] is

11  compound and may call for information that is protected under the

12  attorney client and attorney work product privileges."  (Id. at

13  44.)  Nevertheless, the Defendant City of San Diego produced seven

14  nonprivileged items from the San Diego Police Department relating

15  to criminal case number 11051250:  (1) a "CAD Report" taken on

16  December 29, 2011, for incident P11120050611; (2) 911

17  communications tapes for the incident; (3) a "Crime Report" also

18  taken on December 29, 2011; (4) an investigator's follow-up report;

19  (5) an "Arrest Report" taken on January 11, 2012; (6) a chain of

20  custody report; and (7) lab files.  (Id. at 44-45.)  Despite its

21  objections, "the City still produced the entire SDPD case file

22  pertaining to the subject incident . . . ."  (Def. City San Diego &

23  Raymond Wetzel's Opp'n 3, ECF No. 173.)

24       Hupp contends that the City's privilege objection constitutes

25  "pretext claims," positing that "[t]he proper response [by the City

26  to Hupp's first request] would have been to file for a protective

27

28

                                    7

1  order."[7]   (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 5, ECF No.

2  152.)

3      Plaintiff has not demonstrated that the City's responses to

4  his requests are inadequate.   Hupp asks for "[a]ny and all reports

5  or forms describing any and all aspects of the investigation."

6  (Id. at 24.)   The City responded by producing the entire case file

7  for the incident.   (Def. City San Diego & Raymond Wetzel's Opp'n 3,

8  ECF No. 173.)   The production included five reports, 911 and

9  communications tapes, and lab files.   (Id. at 4.)   Hupp has not

10  articulated why these items are insufficient.

11      Plaintiff's demand for "[a]ny and all statements of WETZEL

12  concerning or mentioning Plaintiff, including any and all email

13  without regard to whether said email account/s are work or

14  personal," (id. at 3), is troubling.   First, Hupp has not

15  demonstrated how the requested statements meet the relevance

16  standard under Federal Rule of Civil Procedure 26(b)(1), given

17  Defendant Wetzel's limited involvement in this case.   Next,

18  Plaintiff has not met his burden of showing that all of the

19  requested statements, particularly those contained in Wetzel's

20  personal e-mail accounts, are within the custody and control of the

21  City.   See United States v. Int'l Union of Petroleum & Indus.

22  Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir. 1989) ("The party

23 ─────────────

24      [7]   Under Federal Rule of Civil Procedure 26(c)(1), "A party or
any person from whom discovery is sought may move for a protective
order in the court where the action is pending . . . ."   Fed. R.
25  Civ. P. 26(c)(1) (emphasis added).   There is no requirement that a
party must file a protective order when withholding potentially
26  discoverable information.   See IPALCO Enterps., Inc. v. PSI Res.,
Inc., 148 F.R.D. 604, 606 n.3 (S.D. Ind. 1993) ("The Court agrees
27  with defendants that they are not required to move for a protective
order under Rule 26(c) every time they object to discovery based on
28  Rule 26(c) grounds.")   Accordingly, Plaintiff's argument is without
merit.

1  seeking production of the documents . . . bears the burden of
2  proving that the opposing party has such control.") (citing Norman
3  v. Young, 422 F.2d 470, 472-73 (10th Cir. 1970)).

4        Plaintiff's request also seeks "[a]ny and all inter-office
5  memos, intra-office memos, reports, letters, correspondence,
6  computerized records or writings that mention, concern, discuss or
7  pertain to Plaintiff." (Pl.'s Mot. Compel Attach. #1 Mem. P. & A.
8  24, ECF No. 152.)  In addition, it includes "[s]tatements and/or
9  interviews of any witnesses, informants, the Plaintiff, Deputy
10 District Attorneys, lawyers, police agents and any Peace Officers
11 including but not limited to WETZEL, or other persons who had any
12 role or contact with WETZEL concerning the investigation of
13 Plaintiff, including any supervisors." (Id.)  These requests are
14 overbroad, and they call for production of items that may be
15 protected by the attorney-client privilege and attorney work-
16 product doctrine. See Hickman v. Taylor, 329 U.S. 495, 510 (1947)
17 ("Not even the most liberal of discovery theories can justify
18 unwarranted inquiries into the files and the mental impressions of
19 an attorney."); see also Upjohn Co. v. United States, 449 U.S. 383,
20 390 (1981) ("[Attorney-client] privilege exists to protect not only
21 the giving of professional advice to those who can act on it but
22 also the giving of information to the lawyer to enable him to give
23 sound and informed advice.") (citing Trammel v. United States, 445
24 U.S. 40, 51 (1980); Fisher v. United States, 425 U.S. 391, 403
25 (1976)).

26       It is unclear whether the City is claiming that it possesses
27 responsive documents that are protected from production by the
28 attorney-client privilege and the attorney work-product doctrine.

1  Initially, Defendant's discovery response was that Plaintiff's

2  request was compound and "may call for information that is

3  protected under the attorney client and attorney work product

4  privileges." (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 44, ECF

5  No. 152 (emphasis added).) In opposing the Motion to Compel, the

6  City is less equivocal. The Defendant argues that Hupp "sought

7  information that is protected under the attorney client and

8  attorney work product privileges." (Def. City San Diego & Raymond

9  Wetzel's Opp'n 3, ECF No. 173.)

10     A party resisting discovery must do more. If this Defendant

11  is "asserting a claim of attorney-client privilege or attorney work

12  product protection[,] [it] must make a prima facie showing that

13  those doctrines apply, typically by submitting a Privilege Log."

14  In re Grand Jury Investigation, 974 F.2d 1068, 1070 (9th Cir.

15  1992).

16     In Safety Dynamics, Inc. v. Gen. Star Indem. Co., No. CV-09-

17  00695-TUC-CKF (DTF), 2014 U.S. Dist. LEXIS 9045, at *9-10 (D. Ariz.

18  Jan. 24, 2014), the court described what is required to refuse

19  discovery based on a claim of privilege.

20          In order to assert a privilege, boilerplate
            objections or blanket refusals inserted into a response
21          to a Rule 34 request for production of documents are
            insufficient. Rule 26(b)(5) requires that a party
22          expressly claim a privilege and describe the nature of
            the documents, communications or things not produced so
23          as to enable the other parties to assess the
            applicability of the privilege or protection. A party
24          objecting based on a claim of privilege must make the
            objection and explain it as to each record sought to
25          allow the court to rule with specificity.

26  Id. (citations omitted) (internal quotation marks omitted). Here,

27  the City did not prepare a privilege log for items it contends are

28

1  covered by the attorney-client privilege or the attorney work-

2  product doctrine.

3       Privilege logs can take many forms.  "[N]ot every case

4  requires strict adherence to the list of items that should be part

5  of a privilege log as identified in In re Grand Jury Investigation,

6  974 F.2d at 1071, and Dole v. Milonas, [889 F.2d 885, 888 n.3, 890

7  (9th Cir. 1989)]." Phillips v. C.R. Baird, 290 F.R.D. 615, 637 (D.

8  Nev. 2013).

9            Generally, a privilege log is adequate if it
             identifies with particularity the documents withheld,
10           including their date of creation; author, title or
             caption; addressee and each recipient; and the general
11           nature or purpose for creation.  In addition, the
             particular privilege relied on must be specified.  A
12           privilege log may be supplemented by an affidavit,
             deposition testimony, or other evidence, if necessary, to
13           establish that each element of the asserted privilege has
             been met.
14

15  6 James Wm. Moore et al., Moore's Federal Practice § 26.47[1][b],

16  at 26-318 to 26-329 (3d ed. 2013) (footnotes omitted).  The

17  Defendant City of San Diego did not provide a privilege log, so

18  Plaintiff Hupp was not able to determine whether the claims of

19  privilege were legitimate or should be the subject of his Motion to

20  Compel.

21       If the City continues to maintain that documents are protected

22  from production by the attorney-client privilege and attorney work-

23  product doctrine, it must produce a sufficiently detailed privilege

24  log and any necessary supplemental materials to Plaintiff by April

25  23, 2014.  See Dominguez v. Schwarzenegger, No. C 09-2306 CW (JL),

26  2010 U.S. Dist. LEXIS 94549, at *8, 23 (N.D. Cal. Aug. 25, 2010)

27  (ordering privilege log).  Neither the Plaintiff nor the Court

28  currently has a basis for determining the legitimacy of these

1   claims of privilege or whether the failure to timely produce a

2   privilege log resulted in a waiver.  A delayed submission of a

3   privilege log is not fatal.  <u>See</u> <u>Burlington Northern & Santa Fe Ry.</u>

4   <u>Co. v. U.S. Dist. Ct. for Dist. of Mont.</u>, 408 F.3d 1142, 1149 (9th

5   Cir. 2005) (calling for a "holistic" assessment of the

6   circumstances in deciding whether the failure to timely produce a

7   privilege log resulted in a waiver of the privilege).

8        At the same time, Hupp has not demonstrated that the

9   objections to his first request should be overruled.  <u>See</u> <u>Ellis</u>,

10   2008 WL 860523, at *4 (noting that "[i]f Defendant objects to one

11   of Plaintiff's discovery requests, it is Plaintiff's burden on his

12   motion to compel to demonstrate why the objection is not

13   justified[]").  Accordingly, Plaintiff's motion as to request for

14   production number one to the City is DENIED, except as to documents

15   described on a forthcoming privilege log and withheld on the basis

16   of the attorney-client privilege or the attorney work-product

17   doctrine.  For those items, the motion is DENIED without

18   prejudice.

19            **2.   Request for production no. 2**

20        The second request asks Defendant City to produce "[a]ny and

21   all documents that comprise of, or are part of, WETZEL'S file,

22   including the disciplinary record and any other documents

23   concerning WETZEL'S hiring, training, duties, performance,

24   assignments and mental and physical condition."  (Pl.'s Mot. Compel

25   Attach. #1 Mem. P. & A. 24, ECF No. 152.)  The City of San Diego

26   objects on several grounds.

27            [T]his request is overbroad as to time and scope and is
             unduly burdensome. Further, it seeks documents protected
28            by the Executive and Official Information Privileges.

                                12

This request also seeks to ascertain protected
information from police files in violation of state law,
Penal Code sections 832.5 and 832.7 and Vehicle Code
section 1808.2. Please see the attached Declaration of
the Police Officer reviewing Internal Affairs Files and
Personnel files, David Ramirez, and the Privilege Log.
This request also seeks to invade the right to privacy of
individuals under the Federal Right to privacy (5 U.S.C.
section 552) and the California Constitution, Art. I,
section 1. It also seeks disclosure of confidential
communications made in anticipation of litigation.
Subject to, and without waiving said objections,
Responding Party responds as follows: Responsive
documents will not be produced at this time.

(Id. at 45.)

Although the City raises many boilerplate objections to Hupp's

requests for documents, it does not support or explain them in its

opposition to Plaintiff's Motion to Compel.  The Court will address

the objections the Defendant elected to pursue when opposing

Plaintiff's motion.  See Bryant v. Armstrong, No. 08cv02318 W(RBB),

2012 WL 2190774, at *6 (S.D. Cal. June 14, 2012).

"[I]n federal question cases . . . in which state law claims

are also raised . . . , any asserted privileges relating to

evidence relevant to both state and federal claims are governed by

federal common law."  6 James Wm. Moore et al., Moore's Federal

Practice § 26.47[4], at 26-334.1; see also Fitzgerald v. Cassil,

216 F.R.D. 632, 635 (N.D. Cal. 2003) (applying federal privilege

laws to alleged violations of the Fair Housing Act, 42 U.S.C.

§ 3604, and various state law claims).  Similarly, in Stallworth v.

Brollini, the court applied federal common law to resolve claims of

privilege in an action alleging § 1983 and state law claims.  288

F.R.D. 439, 442 (N.D. Cal. 2012).  Here, because Plaintiff's

complaint alleges both federal and state law claims, (Third Am.

13

1  Compl. 12-34, ECF No. 64), federal common law will apply to the
2  claims of privilege.
3      Federal common law recognizes a qualified privilege for
4  official information, such as information contained in government
5  personnel files.  To determine whether the information is subject
6  to the official information privilege, federal courts weigh the
7  potential benefits of disclosure against the potential
8  disadvantages.  Sanchez v. City of Santa Ana, 936 F.2d 1027,
9  1033-34 (9th Cir. 1990).
10     Before engaging in this balancing test, however, the party
11 asserting the privilege must make a "substantial threshold
12 showing."  Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal.
13 1995) (citing Kelly v. City of San Jose, 114 F.R.D. 653, 669 (N.D.
14 Cal. 1987)).  It must serve an objection to each discovery request
15 that explicitly "invokes the official information privilege by
16 name."  Kelly, 114 F.R.D. at 669.  The withholding party must also
17 provide the requesting party with a privilege log or equivalent
18 document that specifically identifies the information purportedly
19 protected from disclosure.  Hampton v. City of San Diego, 147
20 F.R.D. 227, 230 (S.D. Cal. 1993).  To support each objection, the
21 party asserting the privilege must submit an affidavit from a
22 responsible official making detailed statements concerning the
23 confidentiality of the withheld information.  Kelly, 114 F.R.D. at
24 669-70.  If the nondisclosing party does not meet this initial
25 burden, the court orders disclosure of the documents; if the party
26 meets this initial burden, the court generally conducts an in
27 camera review of the material and balances each party's interests.
28 Soto, 162 F.R.D. at 613; Kelly, 114 F.R.D. at 671.

14

1    In _Kelly_, the court explained:

2    Unless the government, through competent declarations,
     shows the court what interests would be harmed, how
3    disclosure under a protective order would cause the harm,
     and how much harm there would be, the court cannot
4    conduct a meaningful balancing analysis.  And because the
     burden of justification must be placed on the party
5    invoking the privilege, a court that cannot conduct a
     meaningful balancing analysis because the government has
6    not provided the necessary information would have no
     choice but to order disclosure.

7

8    _Kelly_, 114 F.R.D. at 669; see also Chism v. Cnty. of San Bernadino,

9    159 F.R.D. 531, 534-35 (C.D. Cal. 1994).

10         Hupp argues that his second request to the City seeks relevant

11   documents, and he "reincorporates the response he gave to WETZEL."

12   (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 5, ECF No. 152.)  Yet,

13   the City does not make a relevance objection to request number two,

14   except as a part of its general objections.  (See id. at 42, 45.)

15   Also, the Defendant does not argue relevance in its opposition to

16   Hupp's motion.  (See Def. City San Diego & Raymond Wetzel's Opp'n

17   4, ECF No. 173.)  The Court will not address a boilerplate,

18   unsupported, and unexplained objection.

19         In its opposition to Hupp's Motion to Compel, Defendant City

20   attached a detailed privilege log for Detective Wetzel that

21   describes 117 documents in his personnel file withheld under claims

22   of executive and official information privileges.  (Id. Attach. #3

23   Decl. David Ramirez 10-14 (privilege log).)  The City also attached

24   the Declaration of David Ramirez, Executive Assistant Chief of

25   Police of the San Diego Police Department, in support of these

26   claims of privilege for the withheld documents.  (Id. Attach. #3

27   Ramirez Decl. 3-9.)  Ramirez indicates that he "reviewed the

28   investigatory files held by the Internal Affairs Unit" for any

1   citizen complaints against Wetzel.  (Id. at 4.)  He then asserts

2   "the privileges and protections afforded by state and federal law

3   against disclosure of these records and any information contained

4   therein . . . ."  (Id.)  The assistant chief of policy contends:

> [D]isclosure of these records, if any exist, will
> undermine the ability of this Department to conduct fair
> and thorough investigations into complaints of police
> misconduct, will erode the confidence of the police
> officers and citizens involved in the investigatory
> process and thereby discourage them from fully and freely
> cooperating in it, undermine and negatively affect the
> morale of all of the police officers of this Department,
> and seriously disrupt the operations of the San Diego
> Police Department.

11  (Id.)

12       Ramirez explains that officers' personnel files "contain

13  confidential, personal information about the officer, including

14  personal and family data, medical and employment history and salary

15  information, as well as performance evaluations."  (Id. at 6.)  He

16  maintains that "release of personal information about individual

17  officers can jeopardize the safety of the officer and his or her

18  family."  (Id.)  Ramirez further opines that the objectives of

19  performance evaluations are undermined when "used for purposes

20  outside their intended purpose and scope.  Correspondingly, some

21  superior officers may become reluctant to critically and candidly

22  evaluate subordinates out of concern for the possible disclosure or

23  misuse of their performance evaluations."  (Id. at 7.)  Even

24  pursuant to a protective order, Ramirez concludes that "disclosure

25  of the requested items will create a substantial risk of harm to

26  significant governmental and privacy interests."  (Id.)  "If

27  confidential information is disclosed in this matter, the privacy

28

1  rights of other individuals not a party to this lawsuit may be

2  violated."  (Id. at 8.)

3      In his Motion to Compel, Plaintiff acknowledges that in

4  request number two, he "seeks mainly discipline records of WETZEL."

5  (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 4-5, ECF No. 152.)

6  Hupp's claims against Wetzel focus on the failure of the Defendants

7  to disclose exculpatory evidence to Hupp and the initiation of

8  "illegitimate civil contempt" charges against him.  (See Third Am.

9  Compl. 12-16, ECF No. 64.)

10      The City has made its threshold showing that the requested

11  documents are subject to the official information privilege.  It

12  invoked the official information privilege by name.  Kelly, 114

13  F.R.D. at 669.  Defendant City also submitted a privilege log,

14  detailing the withheld information.  Hampton, 147 F.R.D. at 230.

15  Lastly, it included a declaration discussing how disclosure of the

16  requested information "would harm significant law enforcement or

17  privacy interests."  Kelly, 114 F.R.D. at 669.

18      Having made its threshold showing, the question now becomes

19  whether the benefits of disclosure outweigh the disadvantages.

20  Sanchez, 936 F.2d at 1033-34.  After reviewing Hupp's request, the

21  privilege log submitted by Defendant City, and the Declaration of

22  Ramirez, the Court finds that for most documents, the balance

23  weighs against disclosure.

24      Hupp does not argue that documents other than those dealing

25  with discipline or the specific claims alleged against Wetzel

26  should be produced in response to request number two.  Accordingly,

27  the following items described on the privilege log and pertaining

28  to Detective Wetzel need not be produced:  tab numbers 2-9, 14-15,

1  19-20, 22-23, 28-32, 35, 37-44, 46-55, 57-58, 60-61, 69, 80-115.
2  (See Def. City San Diego & Raymond Wetzel's Opp'n Attach. #3 Decl.
3  David Ramirez 10-14 (privilege log), ECF No. 173.)  For the
4  remaining documents, they are to be produced to the Plaintiff if
5  (1) they relate to the production of exculpatory evidence; (2) the
6  items concern probable cause or the standards for bringing criminal
7  or civil contempt charges; or (3) the documents refer or relate to
8  the credibility, truthfulness, or veracity of Wetzel.  These items
9  are to be produced pursuant to a protective order limiting use and
10  dissemination of the items to this case and providing for their
11  destruction at the conclusion of the matter.  Documents may be
12  redacted to protect other information privileged from disclosure.
13  See Kelly, 114 F.R.D. at 671.

14      The described documents should be produced to Plaintiff as
15  outlined above.  Otherwise, the City may "submit additional
16  declarations and briefs directed toward attempting to satisfy the
17  Court that the interests and policies favoring disclosure are
18  clearly outweighed . . . by a specific, demonstrable, and
19  substantial threat to an important governmental interest."  Id. at
20  672.  The declarations must "establish [a] nexus between the
21  documents in question and the purported reasons for nondisclosure."
22  Chism, 159 F.R.D. at 534.

23      Blanket disclosure of the requested documents would undermine
24  the investigative capacity of the San Diego Police Department and
25  negatively affect the morale of all its officers.  Disclosing
26  unrelated performance reviews of Defendant Wetzel may inhibit
27  supervising officers at the San Diego Police Department when
28  completing future performance reviews of their subordinates.  These

disadvantages outweigh benefits to Hupp, particularly in light of the documents which have already been disclosed to Plaintiff by the City. See Sanchez, 936 F.2d at 1034 (noting that if the disadvantages of disclosing requested information outweigh the potential benefits, "the privilege bars discovery") (citing Jepsen v. Florida Bd. of Regents, 610 F.2d 1379, 1384-85 (5th Cir. 1980); Zaustinsky v. Univ. of California, 96 F.R.D. 622, 625 (N.D. Cal. 1983), aff'd, 782 F.2d 1055 (9th Cir. 1985)).

Except as outlined above, Defendant City has met the requirements under federal common law for properly invoking the official information privilege for this request for documents. Accordingly, Plaintiff's Motion to Compel the production of documents sought in request for production number two to the City is DENIED in part and GRANTED in part.[8]

### 3. Request for production no. 3

Request three seeks the following:

> Any and all documents concerning, or at all relevant, to any formal or informal complaint made against or about any CITY Peace Officer in the last 36 months that concerns perjury, dishonesty or untruthfulness in any manner whatsoever, from any source whatsoever, and concerning any subject matter whatsoever, without regard to the outcome.
>
> > This shall include at a minimum, but is not limited to:
> >
> > > a. Documents concerning all complaints and other disciplinary or police review of you by Internal Affairs, or the Office of the District Attorney or other law enforcement agency;

---

[8] The Defendants' proposed protective order appears to be an acceptable basis for a stipulated order. (Def. City San Diego & Raymond Wetzel's Opp'n Attach. #4 Def. City San Diego & Raymond Wetzel's Proposed Protective Order 2-7, ECF No. 173.)

1                    b. The full and complete documents concerning
each action listed on CITY Peace Officer
2                    disciplinary records;

3                    c. The full and complete documents concerning
all complaints and other disciplinary or police
4                    review of CITY Peace Officers activities
maintained by CITY, including but not limited
5                    of WETZEL; and

6                    d. All information contained in the computers
maintained by Internal Affairs, any other law
7                    enforcement agency, the District Attorney,
including but not limited to, information
8                    retrievable by computer codes, concerning
WETZEL.
9

10  (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 24-25, ECF No. 152.)

11  Defendant City objected to this request, invoking the official

12  information privilege.  (Id. at 46.)  In his motion, Hupp explains

13  the basis for seeking the described items.

14        Plaintiff seeks information of misconduct of CITY Peace
Officers which could establish a "pattern and practice"
15        of misconduct, as such the request is valid and
legitimate. CITY states "Please see the attached
16        Declaration of the Police Officer reviewing Internal
Affairs Files [sic] and Personnel files, David Ramirez,
17        and the Privilege Log." There was no "attached"
declaration, nor "Privilege Log". Lastly, CITY expressly
18        states in the last sentence that "Responsive documents
will not be produced at this time."
19

20  (Id. at 5) (alterations in original).  In its opposition to

21  Plaintiff's motion, the City argues that this request is overbroad,

22  unduly burdensome, and seeks information that is privileged and

23  irrelevant.  (Def. City San Diego & Raymond Wetzel's Opp'n 5, ECF

24  No. 173.)

25     Request number three is objectionable for several reasons.

26  Plaintiff asks for all records of any disciplinary action taken

27  against any police officer, including but not limited to Wetzel, by

28  any law enforcement agency within the last thirty-six months,

1  concerning dishonesty.  As Defendant City indicates, there are over
2  1,800 police officers in San Diego.  (Id.)  The request is
3  exceptionally overbroad.  See Santos ex rel. Santos v. City of
4  Culver City, 228 F. App'x 655, 657 (9th Cir. Mar. 29, 2007)
5  (unpublished memorandum disposition) (holding that a district court
6  did not abuse its discretion in denying a request "for all
7  complaints and arrest reports reflecting an improper use of force
8  by any Culver City police officer and for all complaints and arrest
9  reports referring to any use of force by the individual defendants"
10  as overbroad).

11      Moreover, the requested documents are not relevant to Hupp's
12  lawsuit.  Plaintiff asserts that he wants to "establish a 'pattern
13  and practice' of misconduct."  (Pl.'s Mot. Compel Attach. #1 Mem.
14  P. & A. 5, ECF No. 152.)  While patterns and practices of official
15  misconduct are relevant in § 1983 claims where municipal liability
16  has been alleged, see Monell v. Dep't of Soc. Servs., 436 U.S. 658,
17  694-95 (1978), they are not relevant here because Hupp has not
18  pleaded "a policy, practice, or custom of the [city] [that] can be
19  shown to be a moving force behind a violation of constitutional
20  rights."  Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir.
21  2011); (Third Am. Compl. 1-37, ECF No. 64); cf. Afshar v. City of
22  Sacramento, No. CIV S041088LKKJFM, 2006 WL 1652672, at *2 (E.D.
23  Cal. June 14, 2006) (allowing for depositions of certain witnesses
24  as they "may lead to relevant evidence regarding plaintiff's Monell
25  claim, specifically, whether there is a pattern and practice of
26  jail officials using excessive force against inmates.").

27      Plaintiff's request for "[a]ll information contained in the
28  computers maintained by Internal Affairs, any other law enforcement

1  agency, the District Attorney, including but not limited to,

2  information retrievable by computer codes, concerning WETZEL," (see

3  Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 25, ECF No. 152), will be

4  limited to information "concern[ing] perjury, dishonesty or

5  untruthfulness." (Id.) Request number three overlaps Hupp's

6  second request of the City and the same limitations apply.

7          As drafted, Hupp's requests (a), (b), (c), and (d) are

8  overbroad and irrelevant to Plaintiff's causes of action.   Subparts

9  (c) and (d), however, are limited to documents that refer to

10  Defendant Wetzel and relate to perjury, dishonesty, or

11  untruthfulness, and these items must be produced pursuant to a

12  protective order as described above.   In all other respects, Hupp's

13  motion as to request number three to the City is DENIED.

14              **4.   Request for production no. 4**

15          Plaintiff's request number four asks Defendant City to produce

16  the following:

17      All CITY materials which are in your possession and
        relevant to this incident, including, but not limited to,
18      guidelines, directives, policy statements, procedures,
        training materials of any kind, in any form or medium,
19      concerning CITY policy, custom or practice regarding:

20          a. Discipline of Peace Officers generally;

21          b. Specific discipline for the violation of
            constitutional rights, including, but not limited to
22          withholding exculpatory evidence, fingerprint
            evidence, DNA evidence, police reports,
23          investigative reports; and violations of due
            process;
24
            c. The procedure relating to or regarding acts which
25          violate due process and denies [sic] access to
            exculpatory evidence, fingerprint evidence, DNA
26          evidence, police reports, investigative reports; by
            Peace Officers; and violations of due process rights
27          during and resulting from the withholding of
            exculpatory, fingerprint, DNA evidence, police
28          reports, investigative reports.

1  (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 25, ECF No. 152.)  The

2  City objected to this request but "produced responsive documents

3  including the Discipline Manual for Sworn Personnel."  (Def. City

4  San Diego & Raymond Wetzel's Opp'n 6, ECF No. 173.)  Despite

5  receiving documents from the City, Hupp moves to compel a further

6  production and argues:

7        Plaintiff seeks mainly information CITY has that is
         relevant to this litigation, including but not limited to
8        discipline records of Peace Officers. CITY has not
         responded based on "Executive" and "Official Information"
9        privileges, privacy and CA Penal and vehicle code
         sections. The background of CITY'S Peace Officers,
10       including but not limited to any discipline, misconduct,
         illegal acts and violations of constitutionally protected
11       rights are relevant and are 100% discoverable. CITY does
         not get to pick and chose [sic] what CITY will or will
12       not produce, if CITY wants to claim any of the privileges
         CITY has claimed the proper protocol would have been to
13       ask the Court for a protective order, and let the Court
         make the decision on privilege, or any other claim. CITY
14       claims non-privileged documents were produced as Exhibit
         2. There was no Exhibit 2 attached to the response.
15

16  (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 5-6, ECF No. 152.)

17  Defendant City maintains that this request is overbroad and seeks

18  documents protected by the official information and attorney-client

19  privileges.  (Def. City San Diego & Raymond Wetzel's Opp'n 6, ECF

20  No. 173.)

21       Despite Plaintiff's assertion that the City's response is

22  deficient, Plaintiff does not discuss why the documents produced by

23  Defendant City are inadequate, especially since he asserts that he

24  never received them.  (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 5-

25  6, ECF No. 152.)  Without further specificity, the Court cannot

26  conduct a meaningful analysis of Hupp's argument.  See Bazley v.

27  Gates, No. CIV S-10-1343 LKK, 2012 WL 761660, at *2 (E.D. Cal. Mar.

28  7, 2012) (denying motion to compel) ("Plaintiff has not provided

specific arguments as to why any response or objection is deficient. Merely stating generally that defendants' responses are inadequate is not sufficient."). Moreover, the overbreadth of Plaintiff's fourth request precludes this Court from compelling further discovery from the City. See Erickson v. Microaire Surgical Instruments, LLC, No. C08-5745 BHS, 2010 WL 2196453, at *2 (W.D. Wash. May 27, 2010) ("Overbroad discovery requests are uniformly denied. Where the requests involve information which bears no relationship to the subject matter of the complaint, courts appropriately deny enforcement.") (citing American LegalNet, Inc. v. Davis, 673 F. Supp. 2d 1063, 1069 (C.D. Cal. 2009); Bartholomew v. Unum Life Ins. Co., 579 F. Supp. 2d 1339, 1342 (W.D. Wash. 2008)).

Hupp's Motion to Compel the production of documents described in request number four, directed to Defendant City, is DENIED. If it has not already done so, the City must provide Plaintiff with copies of the documents it agreed to produce, but Hupp claims he never received. (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 6, ECF No. 152.)

### 5. Request for production no. 5

Plaintiff's fifth request seeks documents that refer to third parties.

> Your responses shall include any and all writings and documents, either directly or indirectly, between Freedom Communications Inc. or their representatives, Michael Bishop or his representatives, Richard and Judith Beyl or their representatives, any federal court or their representatives, any federal law enforcement agency or their representatives, any state law enforcement agency or their representatives and any local law enforcement agency or their representatives.

1   (Id. at 26.)   Defendant City objected to this request as "overbroad
2   as to time and scope, unduly burdensome and unintelligible[;]" it
3   continued:   "Responsive, non-privileged documents will not be
4   produced."   (Id. at 48.)   In its opposition to Hupp's Motion to
5   Compel, the City argues that "[t]his Request has nothing to do with
6   this case.   [It] doesn't really ask for documents, and he does not
7   identify 'Michael Bishop or his representatives,' or 'Richard and
8   Judith Beyl or their representatives.'"   (Def. City San Diego &
9   Raymond Wetzel's Opp'n 7, ECF No. 173.)   Plaintiff moves to compel,
10  arguing that the City's "objections are baseless and the reply is
11  non responsive."   (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 6, ECF
12  No. 152.)

13      Hupp's conclusory argument does not demonstrate that Defendant
14  City's objection to this request is misplaced.   The Court agrees
15  that Plaintiff's fifth request is unrelated to this lawsuit.
16  Neither Freedom Communications, Michael Bishop, Richard Beyl, nor
17  Judith Beyl are defendants or witnesses in this case.[9]   (Third Am.
18  Compl. 2-4, ECF No. 64.)   As a result, Hupp's Motion to Compel is
19  DENIED.

20
21
22

---

23      [9]   It appears that Freedom Communication and these individuals
24  were defendants in two of Plaintiff's other lawsuits.   See Hupp v.
    Freedom Commc'ns, Inc., 221 Cal. App. 4th 398, 163 Cal. Rptr. 3d
25  919 (2013); Hupp v. Cnty. of San Diego, No. CIV 13-2655-GPC-RBB,
    2014 WL 68580 (S.D. Cal. Jan. 8, 2014).   To the extent that Hupp's
26  request for discovery is made in connection with his other
    litigation, the Court cautions Plaintiff that the use of discovery
27  requests for improper purposes can be grounds for sanctions.   See
    Fed. R. Civ. P. 26(g)(1)(B)(ii) (explaining that "[b]y signing [a
28  discovery request], an attorney or party certifies that to the best
    of the person's knowledge, information, and belief," the request is
    "not interposed for any improper purpose").

12cv0492 GPC(RBB)

1           **6.    Request for production no. 6**

2           Request six is for "[a]ny and all other documents that relate

3    to this action, no matter how slight, that are not covered in any

4    of the above requests."  (Pl.'s Mot. Compel Attach. #1 Mem. P. & A.

5    26, ECF No. 152.)  Defendant City objected to this request as

6    "overbroad as to time and scope, unduly burdensome and

7    unintelligible."  (Id. at 48.)  The City maintains that it produced

8    "all documents that pertain to the alleged incident in its

9    possession, custody or control."  (Def. City San Diego & Raymond

10   Wetzel's Opp'n 7, ECF No. 173.)

11          In response, Hupp once again makes a conclusory assertion that

12   these objections are "baseless and the reply is non responsive."

13   (Id. at 6.)  Plaintiff has not demonstrated that the objections to

14   this request are unwarranted.  See Ellis, 2008 WL 860523, at *4.

15   Further, this request is overbroad.  See Audibert v. Lowe's Home

16   Centers, Inc., 152 F. App'x 399, 401-02 (5th Cir. Nov. 1, 2005)

17   (unpublished per curiam opinion) (finding that a district court did

18   not abuse its discretion in denying a plaintiff's "extremely broad

19   discovery requests" which asked for "'all things, all documents,

20   all statements, all knowledge of facts, sworn or unsworn, relating

21   to this case'") (quoting the plaintiff's discovery request).

22   Nevertheless, the City indicates that it has produced all documents

23   within its control that pertain to the litigation.  (Def. City San

24   Diego & Raymond Wetzel's Opp'n 7, ECF No. 173.)

25          Consequently, Plaintiff's Motion to Compel the City to produce

26   documents in response to request number six is DENIED.

27

28

1

**B.    Motion to Compel Defendant Wetzel**

2   Hupp served five requests for production and twenty-six
3   requests for admission on Defendant Wetzel.  (See Pl.'s Mot. Compel
4   Attach. #1 Mem. P. & A. 10-13, 17-19, ECF No. 152.)  Plaintiff
5   attached Wetzel's responses to the requests for admission to his
6   motion.  (Id. at 28-35.)  Hupp did not, however, provide the Court
7   with a copy of Defendant Wetzel's responses to his requests for
8   production.[10]

9

**1.    Requests for production**

10   Of Plaintiff's five requests for production directed to
11   Defendant Wetzel, requests one, two, four, and five are materially
12   the same as requests one, two, four, and six served on the City.
13   (Compare id. at 17-19, with id. at 23-26.)  Hupp's request number
14   three to Wetzel mirrors his third request to the City, except the
15   latter is limited to Defendant Wetzel.  (Compare id. at 18, with
16   id. at 24-25.)  In his Motion to Compel, Plaintiff only discusses
17   Wetzel's responses to requests one, two, three, and five.  (Id. at
18   4.)  For that reason, the Court will only address the same four
19   requests.

20   Hupp's motion is deficient for several reasons.  First,
21   Plaintiff has not attached a copy of Defendant Wetzel's responses
22   to his motion.  Although Hupp apparently intended to include a copy
23   of Wetzel's responses as an exhibit to his motion, he did not.
24   (Compare id. at 2 n.2, with id. at 37-49.)  Instead, Plaintiff
25   provided two copies of the City's responses to the requests for
26   production directed to it.  (See id. at 37-62.)  Plaintiff gives a

27

28       [10]   Instead, Plaintiff attached a duplicate copy of the City's
responses to his requests for production to his motion.  (Id. at
51-62.)

12cv0492 GPC(RBB)

marginal explanation as to why Wetzel's responses to requests one, two, three, and five are deficient, but does not discuss why Wetzel's objections are not justified. (Id. at 4.) Hupp has not met his burden of informing the Court of the dispute. See Ellis, 2008 WL 860523, at *4. Second, Plaintiff's requests for production of documents from Defendant Wetzel are duplicative of his requests of the City.

Hupp's Motion to Compel the production of documents in response to requests one, two, three, and five will be disposed of consistent with his Motion to Compel production from the City. See sections III.A.1.-3., 6. As to request number one, the motion is DENIED, except as to documents withheld on the basis of a claim of attorney-client privilege or the attorney work-product doctrine. For request number two, Plaintiff's motion is DENIED in part and GRANTED in part consistent with the Court's ruling on request number two directed to the City. See section III.A.2. Wetzel's objections to request number three are sustained in part; the request is limited to documents relating to the production of exculpatory evidence, Brady material, perjury, dishonesty, or untruthfulness. Hupp's request number five to Wetzel mirrors request number six to the City. The Motion to Compel as to request number five is DENIED for the reasons outlined in connection with request number six to the City. See section III.A.6.

### 2. Requests for admission

"A party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described

1   documents." Fed. R. Civ. P. 36(a)(1). Instead of admitting or

2   denying a request for admission, the responding party may object to

3   the request. See id. 36(a)(5). Plaintiff argues that Wetzel's

4   answers to requests for admission numbers thirteen, fourteen,

5   fifteen, sixteen, seventeen, and eighteen are nonresponsive.

6   (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 5, ECF No. 152.)   The

7   Court addresses each request for admission in turn.

8                   **a.   requests for admission nos. 13 and 14**

9        Hupp's thirteenth request for admission states:   "Do YOU admit

10   Plaintiff's fingerprints were not on any of the letters sent to

11   Jeffrey Howard Freedman, specifically the letters that were the

12   basis for the civil contempt case against Plaintiff; San Diego

13   County Superior Court Case Number 37-2010-00102264-CU-HR-CTL."

14   (Id. at 11.)   Request fourteen similarly asks:   "Do YOU admit

15   Plaintiff's DNA was not on any of the letters sent to Jeffrey

16   Howard Freedman, specifically the letters that were the basis for

17   the civil contempt case against Plaintiff; San Diego County

18   Superior Court Case Number 37-2010-00102264-CU-HR-CTL."   (Id. at

19   12.)   Defendant Wetzel objects to each as "vague, ambiguous and

20   overbroad and [sic] to time.   Responding Party is therefore unable

21   to admit or deny, and answers as follows:   Deny."   (Id. at 32.)

22        Plaintiff moves to compel and asserts that Wetzel provided

23   nonresponsive answers to these two requests for admission.   (Id. at

24   5.)   Wetzel's responses were denials and are inadequate.   "A denial

25   must fairly respond to the substance of the matter; and when good

26   faith requires that a party qualify an answer or deny only part of

27   a matter, the answer must specify the part admitted and qualify or

28   deny the rest." Fed. R. Civ. P. 36(a)(4).   Boilerplate objections

1  are insufficient.   See FTC v. Johnson, No. 2:10-cv-02203-MMD-GWF,

2  2013 U.S. Dist. LEXIS 139592, at *23 (D. Nev. Sept. 25, 2013)

3  (finding that the repeated response, "'After reasonable inquiry, I

4  am unable to obtain the information to admit or deny this

5  statement[]'" was inadequate).

6     The Motion to Compel responses to requests thirteen and

7  fourteen is GRANTED.   Amended answers shall be served on or before

8  April 23, 2014.

9              **b.   requests for admission nos. 15 through 18**

10    Request for admission fifteen provides:   "Do YOU admit that

11 perjury is a felony crime."  (Pl.'s Mot. Compel Attach. #1 Mem. P.

12 & A. 12, ECF No. 152.)  Wetzel's response states:   "Objection:

13 calls for a legal conclusion.  Responding Party is therefore unable

14 to admit or deny, and answers as follows:  Deny."  (Id. at 15.)   In

15 request sixteen, Plaintiff asks:   "Do YOU admit that Peace Officers

16 should not commit perjury."  (Id. at 12.)  Request for admission

17 seventeen reads:   "Do YOU admit that committing perjury as a Peace

18 Officer can lead to criminal charges against said Peace Officer."

19 (Id.)  Lastly, in request eighteen, Hupp asks:   "Do YOU admit that

20 YOU owed a duty to disclose to Plaintiff all exculpatory evidence

21 in any criminal case."  (Id.)  Defendant Wetzel responded to

22 requests sixteen, seventeen, and eighteen as follows:   "Objection:

23 calls for a legal conclusion and is vague, ambiguous and

24 unintelligible.  Responding Party is therefore unable to admit or

25 deny, and answers as follows:  Deny."  (Id. at 33.)  Plaintiff

26 moves to compel, asserting that the answers are nonresponsive.

27 (Id. at 5.)

28

1    Requests for admission fifteen through eighteen exceed the

2    scope of discovery outlined by Federal Rule of Civil Procedure 36.

3    Rule 36(a)(1)(A) provides that a request for admission must relate

4    to "facts, the application of law to fact, or opinions about

5    either."  Fed. R. Civ. P. 30(a)(1)(A).  Here, Hupp's requests do

6    not reference any specific facts of his case.  Instead, Plaintiff

7    asks Wetzel to admit various legal propositions and reach

8    conclusions about certain legal standards.  "[P]ure requests for

9    opinions of law . . . are not contemplated by the rule."  7 James

10   Wm. Moore et al., Moore's Federal Practice § 36.10[8], at 36-25;

11   see also Holston v. DeBanca, No. CIV S-09-2954-KJM-DAD P, 2012 WL

12   843917, at *11-13 (E.D. Cal. Mar. 12, 2012) (denying a plaintiff's

13   requests for admission that sought legal conclusions from the

14   defendant).  For these reasons, Hupp's Motion to Compel responses

15   to requests for admission fifteen through eighteen is DENIED.

16       **C.   Meet-and-Confer Requirement**

17   Defendants argue that Plaintiff did not satisfy the "meet-and-

18   confer" requirement of either the local or federal rules.  (Def.

19   City San Diego & Raymond Wetzel's Opp'n 9-10, ECF No. 173.)  Under

20   local rules, "[t]he court will entertain no motion pursuant to

21   Rules 26 through 37, Fed. R. Civ. P., unless counsel shall have

22   previously met and conferred concerning all disputed issues."  S.D.

23   Cal. Civ. R. 26.1(a).  "If counsel have offices in the same county,

24   they are to meet in person.  If counsel have offices in different

25   counties, they are to confer by telephone."  Id.  The local rules

26   further provide that "[u]nder no circumstances may the parties

27   satisfy the meet-and-confer requirement by exchanging written

28   correspondence."  Id.  The federal rules similarly instruct a party

1   bringing a motion to compel to "include a certification that the
2   movant has in good faith conferred or attempted to confer with the
3   person or party failing to make disclosure or discovery."  Fed. R.
4   Civ. P. 37(a)(1).

5       Rules requiring meet-and-confer efforts apply to pro se
6   litigants.  Walker v. Ryan, No. CV-10-1408-PHX-JWS (LOA), 2012 U.S.
7   Dist. LEXIS 63606, at *5-6 (D. Ariz. May 7, 2012) (denying a motion
8   to compel where an unrepresented party did not include a
9   certification of attempts to meet and confer); see also Jourdan,
10  951 F.2d at 109 (discussing that liberally construing pro se
11  plaintiffs' pleadings and legal arguments does not excuse
12  compliance with straightforward procedural requirements).
13  Moreover, a court may deny a motion to compel solely because of a
14  party's failure to meet and confer prior to filing a discovery
15  motion.  Scheinuck v. Sepulveda, No. C 09-0727-WHA (PR), 2010 U.S.
16  Dist. LEXIS 136529, at *3-4 (N.D. Cal. Dec. 15, 2010); see also
17  Shaw v. Cnty. of San Diego, No. 06-CV-2680-IEG (POR), 2008 U.S.
18  Dist. LEXIS 80508, at *3-4 (S.D. Cal. Oct. 9, 2008) (denying a
19  plaintiff's motion to compel for failing to attempt to meet and
20  confer).

21      Hupp states that "DEFENDANTS Counsel never replied to
22  Plaintiff's 'meet and confer' emails, hard copy mailing or the
23  telephone calls."  (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 3,
24  ECF No. 152.)  Under the local rules, however, parties located in
25  different counties must confer by telephone, and may not satisfy
26  the meet-and-confer requirement through written correspondence.
27  S.D. Cal. Civ. R. 26.1(a).  For that reason, the relevant
28

1 communications between Hupp and Defendants are their telephone

2 calls.

3    The exhibits attached to Plaintiff's motion show that

4 Plaintiff sent Christina Milligan, attorney for both the City and

5 Defendant Wetzel, an e-mail on August 29, 2013 regarding Defendant

6 City's responses to Hupp's discovery requests.  (Pl.'s Mot. Compel

7 Attach. #1 Mem. P. & A. 64, ECF No. 152.)  This e-mail, sent at

8 10:00 a.m., indicated that Plaintiff "will be following this letter

9 up with a call to your office today at 10:05am."  (Id. at 64.)

10 Hupp e-mailed Milligan again at 10:30 a.m. the same day regarding

11 Defendant Wetzel's responses to the discovery requests, stating

12 that Plaintiff "will be following this letter up with a call to

13 your office today at 10:30am."  (Id. at 68.)

14    Aside from two phone calls and e-mails to defense counsel,

15 Hupp made no other efforts to satisfy the meet-and-confer

16 requirement prior to bringing his motion.  Similarly, defense

17 counsel made no efforts to return Plaintiff's phone calls.  (See

18 Def. City San Diego & Raymond Wetzel's Opp'n Attach. #1 Decl.

19 Christina Milligan 1-2, ECF No. 173.)  Although it is Plaintiff's

20 burden to show a good faith effort to meet and confer, defense

21 counsel cannot frustrate that effort by not returning phone calls.

22 Generally, one phone call is not sufficient.  See Daw Indus., Inc.

23 v. Hanger Orthopedic Grp., Inc., No. CIV 06-1222-JAH-NLS, 2009 WL

24 55989, at *1 (S.D. Cal. Jan. 8, 2009) (noting that "a single phone

25 call followed by a letter the same day concluding that the meet and

26 confer effort had failed does not constitute a good faith attempt

27 to resolve the dispute without need of court intervention[]").  In

28 this case, Hupp placed two telephone calls and sent two e-mails to

33

1  counsel for Wetzel and the City.  His phone calls and e-mails went

2  unanswered by Christina Milligan or any of the attorneys

3  representing the Defendants.  Under these circumstances, Hupp's

4  efforts to comply with the meet-and-confer requirement, although

5  minimal, will not preclude the Court from resolving these disputes

6  on their merits.

7                          **IV.   CONCLUSION**

8       For the reasons stated, Plaintiff's Motion to Compel discovery

9  from Defendants City of San Diego and Raymond Wetzel is GRANTED in

10  part and DENIED in part.

11       **IT IS SO ORDERED.**

12

13  Dated: April 9, 2014

                                    Ruben B. Brooks
14                                   United States Magistrate Judge

15  cc:  Judge Curiel
         All Parties of Record

16

17

18

19

20

21

22

23

24

25

26

27

28